Filed 2/25/21  P. v. Collins CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D075405 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD277282) |
| BRIAN KEVIN COLLINS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Yvonne Esperanza Campos, Judge.  Affirmed.

Aurora Elizabeth Bewicke, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Robin Urbanski and Yvette M. Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Brian Kevin Collins of first degree burglary (Pen. Code,[1] § 459) and found true that the alleged premises constituted an inhabited dwelling (§ 460, subd. (a)). The court sentenced Collins to four years in prison.[2]

Collins appeals, contending: (1) the trial court violated his right to a fair trial when it admitted evidence of Collins's flight; (2) the court had a duty to provide the jury with a criminal trespass instruction; and (3) the court prejudicially erred when it withdrew the instruction on attempted burglary. We conclude these contentions are without merit and affirm.

FACTUAL BACKGROUND

Collins and a female companion entered the front entrance of the El Cortez apartment building around 3:30 a.m. on June 16, 2018. A sign at the front door read: "No trespassing allowed." The couple unsuccessfully tried to use the lobby elevator, which required an access card. They then used the internal stairway to climb to the roof of the building. Access to the roof was limited. Collins removed bolts and a lock to open the hatch to gain access to the roof. Collins and his female companion smoked, drank Gatorade, and had sex on the roof of the building.

After spending hours on the roof, Collins jumped down to the fourteenth-floor communal terrace. He then climbed over the ledge of the terrace, scaled the outside ledges of the building, and jumped onto the

---

[1] Statutory references are to the Penal Code unless otherwise specified.

[2] As will be discussed in detail, Collins failed to appear at a readiness conference, and the prosecution filed a new case (case No. SCD279012) alleging failure to appear while on supervised recognizance (§ 1320, subd. (b)). While the court sentenced Collins to four years for the residential burglary case, it also imposed a concurrent two year sentence for the failure to appear case.

2

twelfth-floor apartment balcony, connected to apartment unit 1201. He removed pins to the balcony doors on two different balconies connected to unit 1201. Collins then moved the washer and dryer unit away from the apartment window and forced entry into the apartment by using a broom and a metal pole, which were located on the balcony, to shatter the apartment window. Collins tried to climb through the small window, but severely injured the back of his calf on the broken glass. At about 8:00 a.m., he yelled for help while still on the balcony of unit 1201. Police responded to the scene and found Collins on the balcony lying in a pool of blood. The resident of unit 1201, who was away from home on the night of the burglary, did not give Collins permission to enter his home. Collins was transported to the hospital and later charged with residential burglary.

Collins offered exhibits during the People's case-in-chief but offered no affirmative evidence. Collins did not testify in his defense.

DISCUSSION

I

ADMISSION OF EVIDENCE OF FLIGHT

A.  Collins's Arguments

Collins maintains that the admission of evidence of his flight after he was arrested rendered his trial fundamentally unfair because it forced him to choose between his right to testify in the burglary trial and his Fifth Amendment right to remain silent in the pending failure to appear trial.

B.  Background

On July 16, 2018, the court released Collins on supervised recognizance, over the prosecution's objection. The following day, at the preliminary hearing, the court held Collins to answer on the burglary charge and bound him over for trial. At that hearing, the court ordered Collins to

3

appear for a readiness conference on August 28, 2018. Collins failed to appear at the August 28, 2018 readiness conference, and the court ordered a warrant, which issued on September 12, 2018. North Carolina law enforcement officers arrested Collins on September 12, 2018, and San Diego law enforcement officers extradited Collins from North Carolina on September 28, 2018.

The prosecution filed a new case against Collins, alleging a violation of section 1320, subdivision (b), failure to appear while on own recognizance release.

The prosecution subsequently filed a motion in limine to admit evidence of Collins's flight to North Carolina, arguing that it proved "consciousness of guilt[ ] and [a] desire to avoid prosecution." During argument on the motions in limine, Collins's trial counsel opposed the admission of flight evidence, arguing, "If this evidence is admitted, it may be a situation where the prosecutor is essentially forcing Mr. Collins to express, to say things in violation of his right to silence that has been invoked on the other case . . . . It may essentially put this rebuttable presumption that, look—information that he went to North Carolina, that he fled as consciousness of guilt, it kind of leaves the jury wanting, in my experience or opinion, explanation, as to why did he leave if it wasn't for guilt." Collins also argued that admitting evidence of flight opened the door to evidence regarding potential punishment as a reason for his flight.

The prosecutor countered that "case law and jury instructions are clear that regardless of the reason of a defendant's failure to appear or what they might purport to be the reason for failing to appear, that does show a consciousness of guilt, that it is something that can legally and lawfully be argued by the prosecution."

The trial court ruled that the flight evidence is "clearly" admissible under the case law. As to the potential for Collins to incriminate himself on the pending section 1320 charge, the court stated:

> "[E]very defendant when they testify ha[s] to evaluate issues related to the pros and cons of testifying [¶] . . . [¶] defendants always have the difficult decision of deciding whether they want to testify, given all the issues that are out there that . . . would be asked on cross-examination. [¶] So I don't think that's a legitimate basis to exclude this evidence, which [the court] think[s] does show, potentially can show, a consciousness of guilt. . . . [I]t's even way more dramatic than just leaving the scene. Here, he goes to the opposite side of the country. So I think it is pretty compelling probative evidence that the jury is entitled to hear."

At trial, a San Diego Police Department extradition officer testified regarding Collins's extradition from North Carolina. After Collins missed a court date in the burglary case, the officer extradited him from a North Carolina jail on September 28, 2018, and brought him back to San Diego to face his criminal charges. According to the officer, Collins was "polite, helpful and presented no problems," during the extradition process. The court took judicial notice of the felony minute orders showing Collins's release on supervised recognizance and his subsequent failure to appear in court.

During closing arguments, the prosecutor explained that the jury was allowed to consider Collins's flight to show consciousness of guilt and directed the jury to CALCRIM No. 372.[3] The prosecutor argued, "It's up to you to

---

[3] The court instructed the jury with CALCRIM No. 372, as follows: "If the defendant fled after he was accused of committing this crime, that conduct may show that he was aware of his guilt. If you conclude that the defendant fled, it is up to you to decide the meaning and importance of that conduct. However, evidence that the defendant fled cannot prove guilt by itself."

5

decide its importance. And his flight alone cannot prove guilt by itself. But it's something that you all are allowed to consider. Because what reasonable person just flees from the jurisdiction. It goes to show guilt."

During Collins's trial counsel's closing argument, counsel acknowledged that the prosecutor correctly stated the law regarding flight, but argued that the evidence showed different reasonable interpretations. To this end, defense counsel suggested that the court proceedings were a "scary process" with "a lot of information," and "maybe [Collins] missed his court day." Counsel offered other alternative explanations for Collins's flight: "Maybe he thought he only needed to come back on October 3rd for the jury trial"; "Maybe he's scared because he's innocent. Because he didn't do what they're accusing him of." Defense counsel also argued another reasonable conclusion was that someone would be "concerned because the wheels of the system keep spinning, even though he's not guilty."

## C. Analysis

In the instant matter, Collins challenges the admission of evidence of his flight out of the jurisdiction after he was charged with first degree burglary. As a threshold matter, we observe that evidence of flight and efforts to avoid apprehension are probative of consciousness of guilt, and thus, typically, such evidence is admissible under Evidence Code section 1101, subdivision (b). (*People v. Neely* (1993) 6 Cal.4th 877, 896-897; see *People v. Pitts* (1990) 223 Cal.App.3d 606, 877 [flight is relevant because it may demonstrate consciousness of guilt]; *People v. Sherren* (1979) 89 Cal.App.3d 752, 763 [failure to appear showed consciousness of guilt].) The evidence must be substantial, meaning that it must be reasonable, credible, and of solid value. (*People v. Turner* (1990) 50 Cal.3d 668, 694-695.) The prosecution is only required to show that a reasonable jury could find that the

6

defendant fled or attempted to flee, and based on that evidence, permissibly infer that he harbored a consciousness of guilt and a purpose to avoid being arrested or detected. (*People v. Bonilla* (2007) 41 Cal.4th 313, 328.) "Alternative explanations for flight conduct go to the weight of the evidence, which is a matter for the jury, not the court, to decide." (*People v. Rhodes* (1989) 209 Cal.App.3d 1471, 1477.) A trial court has a sua sponte duty to instruct the jury on flight whenever the prosecution relies on such evidence to show the defendant's guilt. (§ 1127c; *People v. Jurado* (2006) 38 Cal.4th 72, 126.)

Here, Collins does not take issue with the admissibility of the evidence of flight as probative of his guilt, but, instead, he frames the issue as one of constitutional dimension.[4] He therefore argues his constitutional rights were violated when the trial court admitted evidence of his flight because he was forced to choose between his right to testify in the burglary trial and his Fifth Amendment right to remain silent in the subsequent failure to appear trial. We find this argument lacks merit.

A similar contention was made and rejected in *People v. Carter* (1993) 19 Cal.App.4th 1236 (*Carter*). At the trial for one killing allegedly committed by the defendant, evidence of a second killing was introduced to show his intent. (*Id.* at pp. 1244-1247.) The defendant contended he should have been granted immunity for his testimony with respect to the second killing because, without such immunity, he could not testify without risking self-

---

[4] Collins argues that the evidence of flight does not necessarily establish that he left the jurisdiction because he believed he was guilty. Such an argument goes to the weight of the evidence, not its admissibility. It is beyond the role of this court to weigh evidence in the instant matter. (See *People v. Pre* (2004) 117 Cal.App.4th 413, 421.)

incrimination in connection with a subsequent prosecution for the second killing. (*Id.* at pp. 1247-1248, 1249.)

For this contention, the defendant in *Carter*, like Collins here, relied on *People v. Coleman* (1975) 13 Cal.3d 867 (*Coleman*). (*Carter, supra,* 19 Cal.App.4th at p. 1248.) In *Coleman*, our Supreme Court declared a judicial rule of evidence that upon timely objection, "the testimony of a probationer at a probation revocation hearing held prior to the disposition of criminal charges arising out of the alleged violation of the conditions of his probation, and any evidence derived from such testimony, is inadmissible against the probationer during subsequent proceedings on the related criminal charges . . . ." unless it appeared that the probationer had committed perjury. (*Coleman*, at p. 889.) This rule was necessary to ensure that the state's discretion in scheduling the probation revocation hearing would not be used to gain an unfair advantage at trial, through its opportunity to "coerce self-incriminatory testimony by scheduling the probation revocation hearing in advance of trial." (*Id.* at pp. 888-889.) As the court stated, "Because of the inapplicability of certain evidentiary rules and the lower standard of proof obtaining at a probation revocation hearing, the People are generally more likely to achieve a probationer's incarceration through the probation revocation process than through the new prosecution and conviction. When a probationer is deterred from testifying at his revocation hearing by fears of self-incrimination at his subsequent trial, the People's chances of securing his incarceration through the revocation proceeding are further enhanced. And if a probationer does successfully fight revocation by testifying at the hearing, the People's chances of securing his conviction of a new offense will have been improved by the probationer's having been forced, in effect, to be one of the prosecution's principal witnesses in its case in chief at his trial." (*Id.* at

8

pp. 876-877, fns. omitted.) The risks were particularly acute because, in a probation revocation hearing, a probationer's best approach might be to explain the mitigating circumstances surrounding the charged probation violation. (*Id.* at p. 878.)

The court in *Carter* declined to extend the rule of *Coleman* to evidence of uncharged—and as yet untried—other offenses. In doing so, it reasoned that the evidence of other crimes did not implicate the policy against self-incrimination identified in *Coleman* and did not present the same opportunity for abuse. As the court noted, it was unlikely that the prosecution's decision to proffer evidence of the second killing was made in the expectation that the defendant would be compelled to take the stand to explain it. (*Carter*, *supra*, 19 Cal.App.4th at p. 1249.) In addition, "as *Coleman* points out, the need for judicially fashioned immunity is reduced where the concurrent proceeding offers a 'high degree of procedural protection against arbitrariness,' and the defendant's choice is 'generally one of strategy rather than desperation.' [Citation.] Unlike a probation revocation proceeding, fitness hearing, or child dependency proceeding, a criminal trial is replete with procedural protections, principally the requirement that the state prove its case to a jury and establish guilt beyond a reasonable doubt. That protection removes the incentive to testify that was present in . . . cases . . . in which the defendants faced serious potential consequences if they chose not to explain their actions to the trial judge." (*Id.* at p. 1250.) Moreover, the court in *Carter* explained, in cases such as probation revocation proceedings, the probationer's best course might be to admit misconduct to the court but emphasize mitigating factors. In contrast, in a subsequent criminal trial, the best course might be to deny responsibility and trust to the higher standard of proof and to the presence of the jury. "A

defendant contemplating whether to rebut other crimes evidence is in a different position.  In most circumstances, the choice is one of timing rather than strategy, because the defense to other crimes evidence is unlikely to vary from one proceeding to the next.  If the defendant intends to take the stand to deny any connection with the other [crime], that intention would not be different in a trial in which the other crime was charged.  Similarly, if the defendant intends to admit all or part of the uncharged conduct, and submit mitigating or excusing evidence, there is no difference in the posture of the two proceedings which would impel a change in that strategy from one to the next.  Thus, the decision to testify in the first trial rather than the second, or in the second but not the first, is a choice having more to do with a calculation of the likely effect of the testimony than with a dilemma posed by differing defense objectives at the two proceedings. . . ." (*Ibid*.)  Accordingly, the court concluded the dilemma the defendant faced in deciding whether to testify in rebuttal to evidence of crimes that had not yet been tried, "though real, [was] not of such an order as to require immunity." (*Id*. at pp. 1250-1251.)

   We recognize that the question before us now is not whether Collins should have been granted immunity if he chose to testify in response to the evidence of his flight at the trial in the burglary case, but whether the evidence of flight should have been admitted at all.  But the policies considered in *Coleman* and *Carter* are similar to those Collins raises here.  There is no basis to conclude the timing of trial in the two cases was the result of an attempt to disadvantage Collins.  (See *Coleman, supra*, 13 Cal.3d at pp. 888-889.)  At both the trial in the burglary case and the anticipated trial in the failure to appear case, Collins would have the protection of a jury, and the People would be required to prove his guilt beyond a reasonable

doubt. The procedural posture of the two proceedings was the same, and Collins would not face the dilemma posed by differing objectives in the two proceedings. (See *Carter*, *supra*, 19 Cal.App.4th at p. 1250.) He was not required to disclose evidence to the People to defend himself in the burglary case. (See *Teal v. Superior Court* (2004) 117 Cal.App.4th 488, 492 [inappropriate to require defendant to reveal subpoenaed materials to prosecution].)

As noted in *People v. Kiney* (2007) 151 Cal.App.4th 807, 814, "[t]he Constitution does not forbid ever requiring a defendant to choose between competing rights; the criminal process often requires ' "the making of difficult judgments." ' [Citation.] 'The threshold question is whether compelling the election impairs to an appreciable extent any of the policies behind the rights involved.' " We see no such impairment here. On the record before us, we reject Collins's contention that the pendency of the charges in the failure to appear case rendered evidence of flight in the burglary case inadmissible.

## II

## THE CRIMINAL TRESPASS JURY INSTRUCTION

### A. Collins's Arguments

Collins asserts that the trial court erred in declining to provide the jury a criminal trespass instruction (sometimes referred to as unlawful entry), a lesser related offense of residential burglary, because the information charged Collins with burglary and trespass in the conjunctive. In the alternative, Collins maintains the court had a sua sponte duty to provide the criminal trespass instruction.

### B. Background

The information charged Collins with one count of burglary in the first degree, stating: "On or about June 16, 2018, [Collins] did unlawfully enter a

building occupied by another with the intent to commit theft, in violation of Penal Code section 459. [¶] And it is further alleged that said burglary was a burglary of an inhabited dwelling house, within the meaning of Penal Code section 460(a)." (Capitals omitted.)

At the close of trial, Collins's trial counsel asked the court to provide the jury with CALCRIM No. 2932 per section 602.5.[5] In support of this request, counsel admitted that a violation of section 602.5 is not necessarily a lesser-included offense of the charged crime, but that it could be considered. Defense counsel stated that a trespass charge conformed to the evidence in the case and that the defense should not be faced with an "all or nothing" situation.

Relying on *People v. Foster* (2010) 50 Cal.4th 1301 (*Foster*) and *People v. Jennings* (2010) 50 Cal.4th 616, the prosecutor objected to the requested instruction because section 602.5 was not a lesser included offense of residential burglary, and Collins had no federal constitutional right to compel the court to instruct on a lesser related offense.

The court declined to give the requested instruction, finding that trespass was not a lesser included offense of residential burglary and the prosecution held the sole authority to charge Collins.

Collins's trial counsel then requested that the court amend CALCRIM No. 1700 (the burglary instruction) to specify the nature of the building entered. Specifically, defense counsel wanted the instruction to make clear that the building at issue was not the El Cortez building, but an apartment

---

[5] The CALCRIM No. 2932 instruction applies when a defendant is charged with violating section 602.5, which makes it a misdemeanor to enter into "any noncommercial dwelling[,] house, apartment, or other residential place" without consent.

12

unit within the El Cortez building. The prosecutor agreed, emphasizing that the burglary charge was not based on when Collins "entered the front doors of the El Cortez."

With the agreement of the parties, the court provided the following instruction:

> "Under the law of burglary, a person enters a building unit if some or part of his or her body or some object under his or her control penetrates the area inside the building unit's outer boundary. [¶] A building unit's outer boundary includes the area inside a window screen. [¶] An attached balcony designed to be entered only from inside of a private residential apartment on the second or higher floor of a building is inside a building unit's outer boundary."

Following defense counsel's closing argument,[6] the court informed the jury as follows:

> "[I]n our system of government with three different branches and separation of powers, it has been left to the executive branch to determine what, if any, criminal charges they wish to bring. The judicial branch does not interfere with that. [¶] Moreover, there is no constitutional right of a defendant which would compel the opportunity to be given to jurors, as to any other crimes that they would have preferred to face. [¶] . . . So in this case, the People have charged a crime. You'll receive legal instructions and

---

[6] During closing argument, the prosecutor focused on the evidence establishing burglary, specifically discussing unit 1201 and emphasizing that Collins did not have to actually commit theft, but instead, must have had the intent to commit theft when he entered unit 1201. During his closing, in addition to arguing the evidence did not establish all the elements of burglary, defense counsel reminded the jury that Collins was not charged with trespass or merely breaking a window. He also emphasized Collins was not charged with unlawfully entering the El Cortez building or unlawfully entering the roof. Further, defense counsel told the jury that the prosecution was "in charge of what charges [to] bring. They have chosen burglary. They did not choose trespass. You do not have that option."

you have received legal instructions for that crime. So whether or not any other crimes might have been possible charges, those are not at issue because the People did not elect to bring those charges."

## C. Analysis

A court must instruct the jury regarding a lesser-included crime sua sponte if substantial evidence would support a guilty verdict of that lesser-included crime rather than the charged crime. (*People v. Barton* (1995) 12 Cal.4th 186, 194-198.) Instructions regarding lesser related offenses are not to be given absent the mutual assent of the parties. (*People v. Birks* (1998) 19 Cal.4th 108, 112-113 (*Birks*).)

Here, Collins maintains the trial court was required, "under the unique facts of this case," to sua sponte provide the trespass instruction because trespass was a lesser included offense of the burglary. It is not. (See *People v. Taylor* (2010) 48 Cal.4th 574, 622 (*Taylor*) ["Trespass is a lesser related crime of burglary"]; *Foster*, *supra*, 50 Cal.4th at pp. 1343-1344 [finding that because "trespass is a lesser *related* offense, not a lesser *included* offense, of burglary," the court had no sua sponte duty to deliver the instruction].)[7] Further, trial courts may instruct on lesser related crimes only if both parties agree or one party fails to object. (See *Birks*, *supra*, 19

_____

[7]    Both *Taylor* and *Foster* cite to *Birks*, *supra*, 19 Cal.4th 108 for the rule that trespass is not a lesser included offense of burglary. (See *Birks*, at p. 118, fn. 8 ["It appears well settled that trespass is not a lesser necessarily included offense of burglary, because burglary, the entry of specified places with the intent to steal or commit a felony (§ 459), can be perpetrated without committing any form of criminal trespass [Citations.]"].) In *Birks*, the court was applying a statutory elements test to determine if burglary was included in robbery. (*Ibid.*; see *People v. Shockley* (2013) 58 Cal.4th 400, 404 (*Shockley*) [" 'Under the elements test, if the statutory elements of the greater offense include all of the statutory elements of the lesser offense, the latter is necessarily included in the former.' "].)

14

Cal.4th at pp. 112-113, 132.) To conclude otherwise would infringe on the prosecution's sole authority to decide what charges to file and would violate the separation of powers. (*Id.* at p. 134.)

In the instant matter, the prosecutor objected to the giving of the trespass instruction. We are bound to follow *Birks.* (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) Because the prosecution did not agree to give the jury a trespass instruction, and trespass is a lesser related crime of burglary, the trial court properly refused Collins's request.

Nevertheless, Collins argues here that the trial court erred by not giving the trespass instruction under the "accusatory pleading" test. Under this test, " 'if the facts actually alleged in the accusatory pleading include all of the elements of the lesser offense, the latter is necessarily included in the former.' " (*Shockley, supra,* 58 Cal.4th at p. 404.) To this end, he contends "the plain language of the accusatory pleading charged [him] with unlawfully entering a building," and, as such, "he was entitled to the instruction on unlawful entry upon his request, as a matter of constitutional right." In other words, Collins contends trespass is a lesser included offense of the burglary under the "accusatory pleading" test because of the charging language in count 1 of the information. We disagree.

On the one hand, residential burglary is the entry of a dwelling with the intent to commit a felony. (§§ 459 & 460, subd. (a).) Criminal trespass, on the other hand, is the entry of a residence without the owner's consent. (See § 602.5, subds. (a) & (b).) In the crime of burglary, it is the defendant's felonious intent, not the absence of consent or permission, that renders an entry unlawful. (See *People v. Salemme* (1992) 2 Cal.App.4th 775, 780 [noting the " 'law . . . is that one [who enters a structure with the intent to

commit petty theft or a felony] may be convicted of burglary even if he [or she] enters with consent,' " as long as he or she does not have a possessory right to enter].)

We thus independently conclude the words "unlawfully enter" are not synonymous with the words "enter without consent," as Collins contends. In short, count 1 of the information did not allege Collins "unlawfully" entered a building occupied by another "without the owner's consent." Instead, as summarized *ante*, count 1 alleged Collins "did unlawfully enter a building occupied by another with the intent to commit theft . . ." Under the allegations in the information, it was Collins's intent to steal that made his entry unlawful, not the owner's lack of consent.

Because the information did not allege a trespass under the accusatory pleading test, the court was not required to instruct on attempted trespass as a lesser included offense of attempted burglary. (See *Birks*, *supra*, 19 Cal.4th at p. 118, fn. 8 [noting it is "well settled that trespass is not a lesser necessarily included offense of burglary because burglary . . . can be perpetrated without committing any form of criminal trespass," even when the burglary allegations provide that the defendant " 'did willfully and unlawfully enter a commercial building . . . with intent to commit larceny and any felony' "].)

In summary, the trial court did not err in refusing to give the trespass instruction.

## III

## THE ATTEMPTED BURGLARY INSTRUCTION

### A. Collins's Argument

Collins insists the trial court committed prejudicial error when it withdrew a jury instruction on attempted burglary before juror deliberations.

16

## B. Background

During the jury instruction conference, neither party requested an attempted burglary instruction. However, during oral instruction to the jury, which followed closing arguments, the court, on its own accord, recited the attempted burglary instruction, CALCRIM No. 460. Outside the presence of the jury, the court addressed the parties and questioned whether the attempted burglary instruction was needed. Collins's trial counsel asked the court to send a verdict form for the attempted burglary because they could not "unring the bell." The prosecutor objected to the instruction based on a lack of supporting evidence. To this end, the prosecutor noted that CALCRIM No. 1700 correctly stated burglary is committed if the defendant intended to commit theft, and it need not be shown that a theft was actually committed. The court responded, "[T]his is where I got sidetracked, was on the inclusion of the theft, which is what they needed, since nothing, in fact, was stolen."

The prosecutor further argued that attempted burglary was not a theory presented by either party, and neither party received an opportunity to argue attempted burglary. She then requested the court instruct the jury to disregard the attempted burglary instruction. The court agreed to withdraw CALCRIM No. 460 and instructed the jury to only consider the written instructions received.

## C. Analysis

The law governing a trial court's duty to instruct the jury on lesser included offenses, and the standard of review that this court applies in reviewing a trial court's decision regarding whether to give such an instruction, are well established:

> "Instructions on lesser included offenses must be given
> when there is substantial evidence for a jury to conclude

17

the defendant is guilty of the lesser offense but not the charged offense. [Citations.] Substantial evidence is defined for this purpose as 'evidence sufficient to "deserve consideration by the jury," that is, evidence that a reasonable jury could find persuasive.' [Citation.] 'In deciding whether evidence is "substantial" in this context, a court determines only its bare legal sufficiency, not its weight.' [Citation.] The trial court's decision whether or not the substantial evidence test was met is reviewed on appeal under an independent or de novo standard of review. [Citations.]" (*People v. Garcia* (2008) 162 Cal.App.4th 18, 24-25.)

Attempted burglary is a lesser-included offense of burglary, under the statutory elements test. (See *Birks*, *supra*, 19 Cal.4th at p. 117.) Residential burglary is committed when the defendant enters an inhabited dwelling house with the intent to commit larceny or any other felony. (§§ 459, 460; *People v. Magallanes* (2009) 173 Cal.App.4th 529, 535-536.) Attempted burglary consists of two elements: (1) the specific intent to commit burglary; and (2) "a direct but ineffectual act done toward its commission." (§§ 21a, 459, 664; *People v. Toledo* (2001) 26 Cal.4th 221, 229.)

For an "entry" of a building to occur under the burglary statute, something that is outside must go inside. (*Magness v. Superior Court* (2012) 54 Cal.4th 270, 273-274.) The railing of a victim's balcony marks the outer boundary of their apartment building under the burglary statute, and thus intrusion onto the balcony is burglary, where the apartment was on the second floor, or higher, and the balcony was designed to be accessed only from within the apartment. (*People v. Yarbrough* (2012) 54 Cal.4th 889, 894-895.) A burglary is complete upon the slightest partial entry of any kind, with the requisite intent. (*People v. McEntire* (2016) 247 Cal.App.4th 484, 491.) Indeed, the slightest entry by any part of the body or an instrument is sufficient to satisfy the "entry" element of burglary. (*People v. Goode* (2015)

18

243 Cal.App.4th 484, 489; see *People v. Garcia* (2004) 121 Cal.App.4th 271, 280 [An entry occurs for purposes of the burglary statute if any part of the intruder's body, or a tool or instrument wielded by the intruder is inside the premises].)

Here, Collins argues the "direct but ineffectual act" supporting a jury instruction for attempted burglary is that he entered the El Cortez building, looking for a quick opportunity to grab something valuable. However, finding no easy opportunity, he abandoned that intent. Collins further notes that nothing was stolen from unit 1201, and the prosecutor did not identify any item of value that was allegedly the target of Collins's intended theft. This argument, however, ignores the prosecutor's theory of the case and the overwhelming evidence of burglary offered at trial.

The prosecutor made it clear that she was not pursuing the burglary offense based on Collins's entry into the El Cortez building. Rather, the focus was on the burglary of apartment unit 1201. As such, Collins's intent when he entered the El Cortez is not of the moment.

Instead, we look at the evidence offered regarding the alleged burglary of apartment unit 1201. The record shows Collins broke the apartment unit window using a broom and a pole, which both physically entered the apartment and remained inside until the police arrived. Moreover, the injury on Collins's lower leg proved he also physically entered the apartment window because such evidence was consistent with cutting his leg on the broken window glass. Against this foundation, the burglary was completed. There is nothing that Collins could point to that could be a "direct but ineffectual act" to commit burglary. The window was broken by a pole and broom. The unit was entered. The only way the jury could have found Collins committed attempted burglary would have been for it to determine

19

that Collins, at one point, intended to break unit 1201's window to enter but then did not do so.  There is no evidence in the record to support that theory.

Simply put, on the record before us, this was an all-or-nothing burglary case.  The jury had to find beyond a reasonable doubt that Collins used the broom and pole to break the window of apartment unit 1201 and had the intent to commit theft when he did so.  If not, the jury could not convict Collins of burglary.  Further, on this record, there would be no evidence to support an attempted burglary conviction as well.  The trial court did not err by withdrawing the attempted burglary instruction.

## DISPOSITION

The judgment is affirmed.


HUFFMAN, Acting P. J.

WE CONCUR:


HALLER, J.


GUERRERO, J.

20